UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALICIA L. D.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

Case No. 2:25-cv-10799
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

**<u>REPORT AND RECOMMENDATION TO GRANT IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT IN A SOCIAL SECURITY
APPEAL (ECF No. 12), DENY DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT (ECF No. 14), and REMAND THIS MATTER TO THE
COMMISSIONER OF SOCIAL SECURITY</u>**

**I.      RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT IN PART** Plaintiff's motion for

summary judgment in a social security appeal (ECF No. 12), **DENY** Defendant's

motion for summary judgment (ECF No. 14), and **REMAND** this matter to the

Commissioner of Social Security for action consistent with the Court's decision.

**II.     REPORT**

Alicia L. D. ("ALD") brings this action, via counsel, under 42 U.S.C. §§

405(g), 1383(c)(3) for review of a final decision of the Commissioner of Social

Security (Commissioner) denying her application for supplemental security income

(SSI) benefits under Title XVI of the Social Security Act.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for summary judgment (ECF No. 14), Plaintiff's reply (ECF No. 16), and the administrative record (ECF No. 7).

### A.      Background and Administrative History[1]

In July 2021, ALD applied for SSI benefits, alleging disability beginning on July 1, 2011, at the age of 37.  (ECF No. 7, PageID.278-283.)  In her disability report, she lists 31 conditions as limiting her ability to work.  (*Id.*, PageID.308.)

Plaintiff's application was denied initially in February 2022 and on reconsideration in December 2022.  (*Id.*, PageID.152-179, 184-188).  On February 24, 2023, ALD sought a hearing with an administrative law judge (ALJ).  (*Id.*, PageID.200.)  On August 30, 2023, ALJ Christopher Mattia conducted a hearing, at which the claimant, her attorney, and a VE (Roxanne Minkus) appeared.  (*Id.*, PageID.70-112; *see also id.*, PageID.378-379.)  On April 2, 2024, ALJ Mattia issued an unfavorable decision, determining that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id.*, PageID.40-69.)

---

[1] It appears Plaintiff previously applied for disability insurance (DI) and SSI benefits in December 2015 (*see* ECF No. 7, PageID.116), as the administrative record also contains a September 4, 2018 unfavorable decision by ALJ Sarah Zimmerman (*see* ECF No. 7, PageID.113-144) and an August 23, 2019 Appeals Council denial of Plaintiff's request for review (*see id.*, PageID.145-151).

On April 3, 2024, ALD requested review (*id.*, PageID.273-275); however, on February 7, 2025, the Appeals Council (AC) denied the request for review (*id.*, PageID.29-34).  Thus, ALJ Mattia's decision became the Commissioner's final decision.  Plaintiff timely commenced this action on March 21, 2025.  (ECF No. 1.)

**B.     Plaintiff's Medical History**

The administrative record contains approximately 944 pages of medical records (ECF No. 7, PageID.426-1369 [Exhibits 1F-47F]), all of which were available to the ALJ at the time of his April 2, 2024 decision (*see id.*, PageID.65-69).  These records will be discussed in detail, as necessary, below.

**C.     The April 2, 2024 Administrative Decision**

Pursuant to 20 C.F.R. § 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 7, 2021, the application date.  (ECF No. 7, PageID.45.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  degenerative disc disease (DDD) of cervical spine; DDD of lumbar spine; degenerative joint disease (DJD) in the bilateral hips; asthma; inflammatory arthritis; fibromyalgia; depression disorder; anxiety disorder; and post-traumatic stress disorder (PTSD). (*Id.*, PageID.45-47.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the

severity of one of the listed impairments. (*Id.*, PageID.47-50.) **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[2] and determined that Plaintiff had the RFC:

> . . . to perform light work as defined in 20 CFR 416.967(b) except lift or carry 10 pounds frequently and 20 pounds occasionally; stand or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; push or pull within the aforementioned weight restrictions [*i.e., exertional limitations*]; never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl [*i.e., postural limitations*]; frequently handle or finger [*i.e., manipulative limitations*]; occasionally have exposure to vibration, humidity, or atmospheric conditions such as fumes, noxious odors, or other respiratory irritants; never have exposure to extreme cold, extreme heat, unprotected heights, or moving mechanical parts [*i.e., environmental limitations*]; attend and concentrate sufficiently to carry out simple instructions; occasionally perform team or tandem tasks [*i.e., sustained concentration and persistence limitations*]; occasionally interact with the public [*i.e., social interaction limitations*]; and occasionally tolerate changes in a routine work setting [*i.e., adaptation limitations*].

(*Id.*, PageID.50-59.) At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.*, PageID.59-60.) Then, at **Step 5**, the ALJ determined that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*, PageID.60-61.) The ALJ therefore concluded that

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

Plaintiff had not been under a disability, as defined in the Social Security Act, since July 7, 2021, the date the application was filed.  (*Id*., PageID.61.)

### D.   Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

5

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.      Analysis

In this appeal, Plaintiff identifies a single issue for review, *i.e.*, "[t]he ALJ failed to account for the 'total limiting effects' of Plaintiff's severe and nonsevere impairments pursuant to 20 C.F.R. §§ 416.920c, 416.929, and 416.945(e), resulting in a decision that is not supported by substantial evidence." (ECF No. 12, PageID.1377, 1380, 1391.) Preliminarily, the Court notes that the ALJ's RFC assessment, alone, was more than nine pages in length. (ECF No. 7, PageID.50-

6

59.)  After some introductory language (*id.*, PageID.50-51), the ALJ reviewed

several function reports (*id.*, PageID.51-52), testimony (*id.*, PageID.52-53), and

multiple medical records dated December 2019 through August 2023 (*id.*,

PageID.53-57).

The ALJ then explained why Plaintiff's "statements about the intensity,

persistence, and limiting effects of her symptoms" were "somewhat inconsistent

with the overall evidence[,]" (*id.*, PageID.57-58), and discussed the persuasiveness

of various medical opinion evidence (*id.*, PageID.58-59).  These are the areas

challenged by the subsections of Plaintiff's statement of error:  (1) "Dr. DeLoach's

opinion and Plaintiff's self-described limitations patently describe greater

limitations than the ALJ's RFC[,]" (*id.*, PageID.1393-1395); (2) "[t]he ALJ's

deficient analysis of Dr. Dr. DeLoach's opinion[,]" (*id.*, PageID.1396-1399); and,

(3) "[t]he ALJ's deficient analysis of Plaintiff's self-described limitations[,]" (*id.*,

PageID.1399-1403).[3]

---

[3] Counsel is warned that a single issue presented but later broken down into subparts does not comply with the Undersigned's Practice Guidelines for briefing in social security cases, which state, *inter alia*:  "The parties are particularly reminded of the requirement that all briefs must include an 'Issues Presented' page. On that page, the parties shall outline the issues to be presented in their briefing. In the case of a motion for summary judgment or remand, the 'Issues Presented' must indicate the error allegedly committed by the Administrative Law Judge, i.e., the bases for the appeal and grounds for reversal. Within the parties' briefs, the issues presented should be labeled as section headings, and should match the items listed on the 'Issues Presented' page. Any issue addressed in the brief that is not both 1) included in Issues Presented and 2) labeled as a section heading within the

7

### 1.      Opinion evidence (20 C.F.R. § 416.920c)

ALJ Mattia stated he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c."  (ECF No. 7, PageID.50.)  The ALJ's related discussion found "persuasive in part" four state agency opinions:  (a) the January 22, 2022 opinion of psychological consultant Joseph DeLoach, Ph.D. (*see* ECF No. 7, PageID.157-158, 160-162); (b) the February 9, 2022 opinion of medical consultant David Kroning, M.D. (*see id.*, PageID.152, 158-160, 163, 168); (c) the December 5, 2022 opinion of psychological consultant Barbara Jones-Smith, Ph.D. (*see id.*, PageID.172, 175-177); and, (d) the December 6, 2022 opinion of medical consultant Jennie Rose, M.D. (*see id.*, PageID.164, 173-175, 178).  (*Id.*, PageID.58-59.)

### a.      Dr. DeLoach's mental RFC assessment

Plaintiff's opinion evidence challenge concerns the ALJ's treatment of Dr. DeLoach's opinion.  (*See* ECF No. 12, PageID.1393-1399.)  As to DeLoach's assessment of the four functional areas (*i.e.*, the "B" Criteria of the Listings) (*id.*, PageID.157) and DeLoach's mental RFC explanation (*id.*, PageID.162), the ALJ stated:

---

brief, will not be considered by the Court."  *See* www.mied.uscourts.gov.  In this case, at least two separate and specific issues should have been identified, not one extremely broad/general issue.

> I find this opinion is persuasive in part; it is supported by explanation, but somewhat vocationally vague.  This finding indicates, "[W]e can adopt this prior [ALJ] decision," but appears to include different limitations than those in the prior decision.  Further, a preponderance of the evidence including mental status examinations of record (e.g., [*id*., PageID.668]) demonstrating "good rapport" and "appropriate behavior," along with the claimant's written testimony that she only "occasionally" has problems getting along with others ([*id*., PageID.323]) suggests that public contact can be tolerated on an occasional basis and is not totally precluded.  Further, there is no evidence of significant psychomotor slowing/retardation or other symptoms to suggest a work pace limitation or anticipated absenteeism of vocational significance; therefore, such limitations have not been adopted from the prior decision.

(ECF No. 7, PageID.58.)  Thus, in assessing DeLoach's opinion, ALJ Mattia began by noting the differences between ALJ Zimmerman's September 4, 2018 mental RFC assessment (*id*., PageID.124) and DeLoach's mental RFC assessment (*id*., PageID.160-162).

### b.    Sustained concentration and persistence

First, Plaintiff contends the ALJ "failed to explain whether he credited or rejected [DeLoach's] limitation related to off-task time."  (ECF No. 12, PageID.1394.)  To be clear, although DeLoach concluded that Plaintiff did not have "understanding and memory limitations," he concluded that Plaintiff was "moderately limited" in some aspects of "sustained concentration and persistence," "social interaction," and "adaptation."  (ECF No. 7, PageID.160-162.)  In this appeal, Plaintiff particularly points to DeLoach's opinion that Plaintiff is "moderately limited" in her "ability to complete a normal workday and workweek

9

without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[,]" which is a "sustained concentration and persistence" limitation (*id*., PageID.161). (*See* ECF No. 12, PageID.1382, 1394.)  In response, the Commissioner notes that the Disability Determination Explanation (DDE) form completed by DeLoach cautions:  "The questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion[,]" (ECF No. 7, PageID.160).  *See also* Social Security Administration's Programs Operations Manual System (POMS), §§ DI 24510.060 ("Mental Residual Functional Capacity Assessment"), 25020.010 ("Mental Limitations").  (ECF No. 14, PageID.1413-1414.)

Whether labeled as a "concentration and persistence" or an "off-task" limitation, Plaintiff takes issue with ALJ Mattia's observation about psychomotor slowing/retardation.  (ECF No. 12, PageID.1397-1399.)  In the written decision, ALJ Mattia, having already found at Step 3 that "the evidence establishes moderate limitation, in regard to, concentrating, persisting, or maintaining pace[,]" (ECF No. 7, PageID.49), explained when finding DeLoach's opinion "persuasive in part" that "there is no evidence of significant psychomotor slowing/retardation or other symptoms to suggest a work pace limitation or anticipated absenteeism of

vocational significance; therefore, such limitations have not been adopted from the prior decision." (ECF No. 7, PageID.58; *see also id*., PageID.59.)[4]

Plaintiff contends that psychomotor slowing/retardation is only "one possible reason for an off-task limitation[,]" and it would be incorrect to conclude "there are *no other symptoms* in the record to support Dr. DeLoach's off-task limitation . . . " (ECF No. 12, PageID.1397-1398 (emphasis in original).) On this subject, Plaintiff points to:

- August 2021 and April 2023 medical records reflecting "fatigue (to the point of losing her career and her children)," (*see* ECF No. 7, PageID.858, 1130; *see also id*., PageID.511, 518, 529, 838, 848);

- "evidence of debilitating symptoms of autonomic nervous system dysfunction[,]" such as the August 2021 and April 2023 autonomic review of systems, each of which included "*brain fog, fatigue, lightheadedness (has passed out infrequently), dry eyes, dry mouth, headaches, tinnitus, vertigo, chest pain, palpitations, chest pressure, poor exertional tolerance, dyspnea, abdominal pain, bloating, diarrhea, constipation, poor appetite, nausea, vomiting, early satiety, bladder urgency, frequency, incomplete voiding, pain with intercourse, vaginal dryness, and decreased libido, numbness, tingling, swelling of hands and feet, hyperhidrosis, heat and cold intolerance, depression, anxiety*[,]" (*see id*., PageID.859, 1131; *see also id*., PageID. 512, 519, 529, 839, 848); and,

- August 2021 records indicating she "has peripheral neuropathy, which is quite painful, mainly with left sided weakness, more

---

[4] ALJ Zimmerman's September 4, 2018 RFC assessment determined that Plaintiff "is unable to work at a production rate pace, such as on an assembly line[,]" "may be in the vicinity of, but can have no interaction with, the public[,]" and "is able to carry out simple instructions." (ECF No. 7, PageID.124.)

so than right[,]" (*see id.*, PageID.858; *see also id.*, PageID.511, 519, 529, 838, 848, 1130).

(ECF No. 12, PagID.1397-1399.)

However, to the extent Plaintiff contends within her opinion evidence argument that the "evidence of debilitating symptoms of autonomic nervous system dysfunction" would result in "inevitable and necessary off-task time[,]" (*id.*, PageID.1398), and wonders why the ALJ did not adopt DeLoach's opinion that she is "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[,]" (*id.*, PageID.161), she has failed to show how the ALJ's RFC's *sustained concentration and persistence limitations – i.e.*, she can "attend and concentrate sufficiently to carry out simple instructions" and "occasionally perform team or tandem tasks" – are inadequate.

Thus, although mindful of Plaintiff's observations that "[t]he ALJ is required to incorporate only those limitations that he or she accepted as credible[,]" *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389–90 (6th Cir. 2015) (citing *Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993)), and that "[w]orksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored[,]" *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015) (*see* ECF No. 16,

12

PageID.1431-1432), Plaintiff has not satisfied her burden to show error in the ALJ's concentration and persistence limitations.

### c.      Social interaction & adaptation

Second, Plaintiff contends that DeLoach "opined greater social limitations than the ALJ's RFC." (ECF No. 12, PageID.1394-1395.)  DeLoach's mental RFC assessment concluded that Plaintiff was "moderately limited" in the ability to "accept instructions and respond appropriately to criticism from supervisors," as well as the adaptive ability to "set realistic goals or make plans independently of others" (*see* ECF No. 7, PageID.161), and – within the mental RFC's narrative and additional explanations – the ALJ noted that Plaintiff had difficulty "in functioning independently of support from others[,]" and "may work best alone or in a small, familiar group with occasional interaction with coworkers and supervisors." (*Id*., PageID.161-162.)

By comparison, the ALJ's only social interaction limitation was "occasionally interact with the public" and the only adaptation limitation was "occasionally tolerate changes in a routine work setting." (ECF No. 7, PageID.50.) Plaintiff contends "[t]he ALJ's analysis of Dr. DeLoach's opinion failed to address why the evidence did not support greater social limitations related to coworkers and supervisors." (ECF No. 12, PageID.1395 (citing ECF No. 7, PageID.58)).  Put another way, Plaintiff contends the ALJ "failed to directly address whether he

rejected or accepted Dr. DeLoach's limitation for occasional interaction with coworkers and supervisors . . . ."  (ECF No. 12, PageID.1396-1397.)

In the written decision, ALJ Mattia, having already found at Step 3 that "the evidence establishes moderate limitation" in regard to "interacting with others" and "adapting or managing oneself," (ECF No. 7, PageID.49), explained when finding DeLoach's opinion "persuasive in part" that "a preponderance of the evidence including mental status examinations of record (e.g., [ECF No. 7, PageID.668]) demonstrating 'good rapport' and 'appropriate behavior,' along with the claimant's written testimony that she only 'occasionally' has problems getting along with others ([*id*., PageID.323]) suggests that public contact can be tolerated on an occasional basis and is not totally precluded."  (ECF No. 7, PageID.58.)

Indeed, Plaintiff did note in her September 25, 2021 function report that she "occasionally" had problems getting along with others.  (*Id*., PageID.323.) However, as Plaintiff points out in this appeal, she also indicated that she "rarely" spends time with others, noting she is "pretty secluded," she gets along "terribl[y]" with authority figures, noting she "feel[s] so misunderstood," and she would quit a job before they could fire or lay her off because of problems getting along with others.  (*See id*., PageID.323-324.)  Moreover, in her November 2, 2022 function report, she noted she had problems with peers and sometimes bosses (*id*., PageID.343), and she testified at the August 2023 administrative hearing that she

14

will behave like she is "emotionally unstable," she will be really "short tempered,"

she "[does not] communicate right," she "[does not] interact right[,]" and she

"[does not] work well with others[,]" (*id.*, PageID.98, 110).  (ECF No. 12,

PageID.1396.)

However, ALJ Mattia cited the September 1, 2020 "mental status and plan"

by Victoria Ball, N.P. (ECF No. 7, PageID.668) within his review of the medical

evidence (*id.*, PageID.53-54) and again within his assessment of DeLoach's

opinion as an example of a mental status examination demonstrating "good

rapport" and "appropriate behavior," (*id.*, PageID.58).  As the Commissioner

notes, there are other instances of "appropriate behavior" (*see, e.g.*, ECF No. 7,

PageID.634, 640, 644, 652, 657, 965, 973, 979), "good rapport" (*see, e.g., id.*,

PageID.634, 644, 652, 657, 965, 973), or "fair rapport" (*see, e.g., id.*, PageID.640,

979).  (ECF No. 14, PageID.1415; *see also* ECF No. 7, PageID.663, 969.)  Thus,

the Commissioner's citation to "numerous examinations where Plaintiff's behavior

was rated as normal or appropriate, and she was found to have good to fair rapport

. . . [,]" (*see* ECF No. 14, PageID.1415), is not, as suggested by Plaintiff in her

reply, "impermissible post hoc rationalization . . . ."  (ECF No. 16, PageID.1434.)

Nonetheless, for the reasons stated below with respect to Plaintiff's "daily

activities," namely as to "social activities," the Court should require the

Commissioner to revisit whether Plaintiff is entitled to greater social interaction limitations, including as to coworkers and supervisors.

### d. Source of medical opinions

Finally, Plaintiff takes issue with the fact that "there are no medical opinions from an *examining* source in the record[.]" (ECF No. 12, PageID.1399 (emphasis added); *see also* ECF No. 14, PageID.1434-1435.) Preliminarily, Plaintiff's reliance on *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824 (E.D. Mich. 2017) (Patti, M.J.) is misplaced, because it involved an ALJ who had the claimant "stand up at the hearing so she could 'look at her legs'" and assessed them for swelling and then "pointed to her own experience as a nurse and implied an expertise beyond that of an adjudicator." *Gross*, 247 F.Supp.3d at 830 ("For the purposes of Social Security Disability Law, ALJ Paige is as much a lay person as I am, or very nearly so."). Nothing like that happened here, and, unlike in *Gross*, the ALJ did not interpret "raw medical data." *Gross*, 247 F.Supp.3d at 830. More to the point, the Sixth Circuit has "previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ." *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018). Any argument that "the ALJ erred because he 'did not rely on any physician's opinion in formulating his RFC' has been squarely rejected by the Sixth Circuit." *Davis v. Comm'r of*

16

*Soc. Sec. Admin.*, No. 2:18-CV-10228, 2019 WL 2051899, at *6 (E.D. Mich. Feb. 19, 2019) (Patti, M.J.), *report and recommendation adopted sub nom. Davis v. Comm'r of Soc. Sec.*, No. 18-10228, 2019 WL 1324239 (E.D. Mich. Mar. 25, 2019) (Battani, J.).  (*See also* ECF No. 14, PageID.1418-1419.)  Thus, to the extent argues that "the ALJ's RFC was impermissibly based on his lay opinion[,]" (ECF No. 12, PageID.1399), it is a non-starter.

### 2.    Subjective symptoms (20 C.F.R. § 416.929, SSR 16-3p)

Plaintiff contends "the ALJ's rejection of Plaintiff's self-described mental and physical limitations was based on several fundamental inaccuracies and mischaracterizations of the record," as well as "omissions," and her "complex constellation of symptoms stemming from her multitude of severe and chronic physical and mental impairments would result in inevitable off-task time that went unaccounted for in the ALJ's RFC."  (ECF No. 12, PageID.1395, 1400.)

ALJ Mattia stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p."  (ECF No. 7, PageID.50.)  When evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which her symptoms limit her capacity for work, the ALJ considers, *inter alia*, "other

17

evidence."  20 C.F.R. § 416.929(c).  The SSA considers factors relevant to a claimant's symptoms, including:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

### a.     Conservative treatment & medication side effects

Plaintiff sets forth several challenges to the ALJ's reasons why he concluded that Plaintiff's statements about her symptoms were "somewhat inconsistent with the overall evidence[,]" (*id*., PageID.57-58).  (ECF No. 12, PageID.1399-1403.)  First, Plaintiff challenges the ALJ's statement that Plaintiff's "treatment is generally conservative," and "no inpatient stays or invasive procedures are

18

indicated." (ECF No. 7, PageID.57.) Citing IVIG treatments for autonomic ganglionopathy (*id.*, PageID.545; *see also id.*, PageID.1117, 1037, 1135), diuretics prescriptions for edema (*id.*, PageID.545; *see also id.*, PageID.552, 1037, 1044), a "mast cell cocktail" apparently consisting of "aspirin 81 mg daily, allegra 180 mg once daily, pepcid 40 mg once daily, singulair 40 mg once daily, and cromolyn sodium 200 mg four times daily" (*id.*,PageID.862; *see also id.*, PageID.532, 1113, 1225), an August 2021 list of various prescriptions (*id.*, PageID.546-547), taking Tramadol in June 2023 (*id.*, PageID.1136), and a September 2021 plan for an EpiPen for mast cell activation syndrome (MCAS) (*id.*, PageID.587), Plaintiff contends "her treatment was hardly conservative." (ECF No. 12, PageID.1400.) However, the statement about conservative treatment, which the ALJ contrasted with invasive procedures and inpatient stays (*see* ECF No. 7-1, PageID.57) is not inaccurate, even if it leaves some room for debate between advocates.[5] It is also a valid reason to discount severity. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727 (6th Cir. 2013). Thus, Plaintiff has not shown error in the ALJ's consideration of the "[t]reatment, other than medication, you receive or have

_____

[5] To be sure, the Commissioner suggests that the mast cell/IVIG cocktail treatment only lasted twelve weeks and "appears to have been completed by April 2021" (*see* ECF No. 14, PageID.1422 (citing ECF No. 7, PageID.518 [dated April 29, 2021], 527 [dated August 26, 2021])); however, there are records indicating Plaintiff was started on a mast cell cocktail in August 2021 (*see id.*, PageID.532, 862) and in January 2023 (*see id.*, PageID.1113, 1225).

received for relief of your pain or other symptoms[.]"  20 C.F.R. § 416.929(c)(3)(v).

Relatedly, citing a January 2023 assessment by Shanti Lynn, Eswaran, M.D that Plaintiff's chronic idiopathic constipation was "refractory to several OTC [(over the counter)] and prescription meds" (*id*., PageID.1112-1113, 1116; *see also id*., PageID.526, 855, 1228) and a February 2023 record from Prashant Singh, MBBS that Plaintiff "[f]ailed reglan and domperidone" for gastroparesis (*id*., PageID.1126), Plaintiff contends "she could not tolerate the side effects of her IBS medication, Linzess, and her providers noted that she failed numerous other medications to treat this issue."  (ECF No. 12, PageID.1400.)  The ALJ in Plaintiff's case, having previously made multiple references to medication side effects (*see*, *e.g.*, ECF No. 7, PageID.51-54), stated:  "Concerning any medication side effects, the record does not demonstrate significant side effects.  The medical record shows her medications are monitored, adjustments made, or side effects denied."  (*Id*., PageID.58.)  Plaintiff has shown some error in the ALJ's consideration of "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]"20 C.F.R. §§ 416.929(c)(3)(iv).  He clearly considered the side effects of medications throughout his opinion; however, even if his statements about monitoring and adjustments are accurate, his statement about denials of side effects is inaccurate.

20

The pages cited by the ALJ merely state:  "Medication benefits, risks, and side effects discussed."  (*See* ECF No. 7, PageID.53 (*citing id*., PageID.666); *id*., PageID.54 (citing id., PageID.661).)  (*See also* ECF No. 7, PageID.632, 638, 642, 650, 656, 963, 972, 978, .)    Thus, Plaintiff has shown error in the ALJ's consideration of 20 C.F.R. § 416.929(c)(3)(iv).

### b.    Restroom use

Second, Plaintiff challenges the ALJ's following statement:  "at the hearing, claimant stated that she spent a lot of time in the restroom daily;" however, at "the last renal office visit in May 2023," the specialist – who is identified in the record as nephrologist Adeel Khan, M.D. – advised "most recent labs show normal kidney function," "[b]lood pressure is under good control[,]" the specialist did not see "evidence of fluid overload[,]" and "[did] not feel she needs ongoing … follow-up[,]" [(*id*., PageID.1071)]."  (ECF No. 7, PageID.57.)  Plaintiff contends the ALJ's statement is "irrelevant, or at the very least incomplete," because she "spends a significant amount of the day in the bathroom primarily due to her gastrointestinal symptoms."  (ECF No. 12, PageID.1401.)

In addition to nephrology records from Dr. Khan and Julie Reneaud, N.P. of Renal Associates of Mid-Michigan (*see* ECF No. 7, Exhibits 1F, 3F, 8F, 29F, 37F, 38F), the medical evidence of record (MER) includes gastroenterology consultations dated October 30, 2020 (ECF No. 7, PageID.499-503, 825-830), July

21

30, 2021 (*id.*, PageID.522-527, 852-856), and February 17, 2023 (*see id.*, PageID.1123-1127, 1229-1234), each performed by Prashant Singh, MBBS. The MER also contains the January 19, 2023 progress notes of Shanti Lynn, Eswaran, M.D. (*see id.*, PageID.1112-1116, 1225-1229), who Plaintiff refers to as a gastroenterologist. (*See* ECF No. 12, PageID.1388-1389, 1400.)

At the August 30, 2023 administrative hearing that, when Plaintiff's counsel asked Plaintiff to "tell us why you are unable to work . . . [,]" Plaintiff testified, *inter alia*:

> I also have various issues with abdominal pain. That is one of my major disabilities. I spend the majority of my days as you call in the washroom. I have severe gastroparesis, IBS. And oh, lystasis. I don't know when I developed it. I think I developed that after I had my gallbladder removed, but that is continually getting worse. It causes back up bile and toxins to build up in my body and I get really sick until I -- and I retain stool and urine and everything until I can get it out. I get really, really sick, and a placebo [sic] it causes a lot of pain and discomfort.

(ECF No. 7, PageID.83.) Moreover, when her counsel asked "how many washroom visits [she] would need to make in an hour[,]" she testified, *inter alia*: "[S]ometimes when I am constipated[,] I also get diarrhea, which sounds really cra[z]y, and I will get the other. You know, I will go the other way, and I can be -- I don't know -- 15 times in an hour, in the morning." (*Id.*, PageID.94.)

The ALJ's treatment of Plaintiff's subjective statements regarding bathroom use is incomplete. ALJ Mattia concluded at Step 2 that Plaintiff's gastroparesis

was one of her "non-severe medically determinable impairments," (ECF No. 7, PageID.46), and, within the RFC determination, he acknowledged her testimony about "severe gastroparesis and spends a lot of time in the washroom (sometimes 15 times in an hour)[.]" (*Id*., PageID.53.) ALJ Mattia's extensive review of the medical records includes express citations to the October 2020 and July 2021 visits as gastroenterology records (*id*., PageID.54, 55), as well as citations to the January 2023 and February 2023 visits, although without express attribution to gastroenterology (*id*., PageID.56, 57).

Yet, when it came time to discount her need to use the bathroom, ALJ Mattia only cited her renal function. Perhaps the ALJ also meant to discount her subjective symptoms related to gastroparesis. If so, it is not clear. The lack of clarity is concerning, especially where the Court notes the MER contains evidence that Plaintiff was diagnosed with "dysautonomia with severe gastroparesis, possibly autoimmune mediated . . . ." (*Id*., PageID.522, 532, 844, 851, 861.) The Commissioner's interpretation of Plaintiff's argument misses the mark, at least as to completeness. (*See* ECF No. 14, PageID.1423-1424.)

Remand is warranted to clarify the ALJ's treatment of her subjective symptoms related to bathroom use, which must include some express consideration of her gastroparesis symptoms. Having to spend inordinately long periods in or make an unusual number of visits to the bathroom during the course of a workday

could have an effect on employability in a competitive labor market.  (*See* ECF 7-1, PageID.103, VE testimony) ("there is likely no work in a competitive labor market" once "we reach 20 percent off task on a consistent basis, which is an hour and a half.").

### c.     Standing / Walking

Third, Plaintiff contends "the ALJ's analysis of her self-described limitations [does not] reflect any consideration of how her abilities to stand and walk are severely compromised by her numerous, complex, and rare autoimmune and mast cell disorders." (ECF No. 12, PageID.1401-1402.)  But Plaintiff's contention is based only on her administrative hearing testimony regarding standing.  (*Id.* (citing id., PageID.90, 84).)  "The ALJ is not required to accept a claimant's own testimony regarding allegations of disabling pain when such testimony is not supported by the record." *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003).  This portion of Plaintiff's argument does not "point to any objective evidence that corroborates her claim, including findings of limited ability to stand or walk." (ECF No. 14, PageID.1424.)  Indeed, the Commissioner points to five instances where the ALJ cited examples of unremarkable neurological and musculoskeletal exams (ECF No. 7, PageID.55 (*citing id.*, PageID.PageID.625 [November 2021]); *id.*, PageID.56 (*citing id.*,

24

PageID.889 [May 2022]); *id.*, PageID.57 (*citing id.*, PageID.1067-1068 [May 2023], 1232 [February 2023], 1252 [July 2023]).  (ECF No. 14, PageID.1424.)

Relatedly, Plaintiff contends the ALJ did not "discuss how her self-described limitations compared to medical evidence regarding her autoimmune autonomic ganglionopathy, paraneoplastic neuropathy, and fibromyalgia, to name a few[,]" (ECF No. 12, PageID.1401-1402), in support of which she cites two medical records, namely the records of Drs. Danielle Y. Bennett, D.O. and Carlos Diola, M.D.  While Dr. Bennett's September 16, 2021 assessments included mast cell activation syndrome, autoimmune autonomic ganglionopathy, and paraneoplastic neuropathy, the physical exam noted no distress, normal range of motion in the neck, and normal behavior, mood, judgment, and thought content.  (ECF No. 7, PageID.586-587.)  About two weeks later, Dr. Diola assessed psoriatic arthropathy, inflammatory polyarthropathy, and fibromyalgia, and noted "active synovitis both joint and tenosynovitis of the right ankle joint but also evident synovitis of the MCP and PIP joints[,]" and the plan included "follow-up with her pain clinic specialist for management of her spinal pain[,]" but her physical exam noted "no focal deficit" and she was "alert and oriented to person, place, and time."  (*Id.*, PageID.604-605.)  Thus, as the Commissioner notes, "the evidence Plaintiff cites . . . fails to corroborate her argument."  (ECF No. 14, PageID.1425.)

25

Nonetheless, for the reasons stated below with respect to Plaintiff's "daily activities," namely as to "standing and walking," the Court should require the Commissioner to clarify the SSA's support for the conclusion that Plaintiff is able to "stand or walk for 6 hours in an 8-hour workday[.]" (*Id*., PageID.50.)

### d.    Daily activities

Finally, Plaintiff takes issue with the ALJ's statement that "Function Reports show ability to take care of her cats, prepare simple, easy meals, do some household chores, use public transportation, perform all 'Money' tasks, shop by phone or by computer, watch TV, read, craft, attend church, and visit with others[,]" (ECF No. 7, PageID.57), claiming "the ALJ's summary of her daily activities is misleading . . . ."  (ECF No. 12, PageID.1402.)

A claimant's "daily activities" are relevant to her symptoms, as set forth in the regulation governing the SSA's evaluation of symptoms, including pain.  *See* 20 C.F.R. § 416.929(c)(3)(i).  Indeed, each of Plaintiff's function reports, as well as the third-party function report completed by her ex-husband, contain sections titled, "Information About Daily Activities," within which claimants are asked about subjects such as personal care, meals, house and yard work, getting around, shopping, money, hobbies and interests, and social activities.  (*See* ECF No. 7, PageID.320-323, 339-342, 412-416.)

26

### i.    Standing and walking

Preliminarily, whatever challenge Plaintiff has regarding the relevance of the ALJ's remarks on watching television and reading, the Court turns to Plaintiff's statement that the ALJ's "cursory discussion of her daily activities failed to address her standing and walking limitations." (ECF No. 12, PageID.1402 (citing *id*., PageID.57-58).)  Early in ALJ Mattia's RFC assessment he discussed the three function reports and Plaintiff's testimony at length – including references to standing and walking (*see id*., PageID.51-53).  Subsequently, within his consideration of Plaintiff's subjective symptoms, he listed multiple activities other than watching television and reading (*see id*., PageID.57), although not standing and walking.  As a result, the subsequent reviewer is left to wonder about the ALJ's support for the RFC's exertional limitation that plaintiff can "stand or walk for 6 hours in an 8-hour workday[,]" (ECF No. 7, PageID.50).  The Court suspects the ALJ intended these exertional limitations to be supported by state agency medical consultants' Kroning and Rose's February 9, 2022 and December 6, 2022 respective opinions (s*ee* ECF No. 7, PageID.159, 162, 174, 178), each of which the ALJ found to be "persuasive in part[,]" (*id*., PageID.58-59), but the basis or bases for the RFC's exertional limitations on standing and walking should be clarified on remand, as should the ALJ's treatment of her subjective statements regarding these activities.

### ii. Household chores

To the extent Plaintiff questions the ALJ's definition of "household chores," (ECF No. 12, PageID.1402), Plaintiff's function reports each contain sections on "house and yard work" (*see* ECF No. 7, PageID.340, 321) as does the third party function report completed by Plaintiff's ex-husband (*see id*., PageID.413-414). Moreover, "[a]s a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain." *Blacha v. Sec'y of Health & Hum. Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

### iii. Social activities

Finally, as for social activities, Plaintiff points to her November 2, 2022 function report, which describes the kinds of things she does with others as "nothing really," and which states, *inter alia*, "I am a hermit to my comfy needs at home on my couch[,]" "laying down," "not sitting up or standing[,]" and "being by [her] toilet[.]" (ECF No. 7, PageID.342). However, at Step 3, the ALJ noted: "[A]ccording to her statements, the claimant is also able to visit with others in person, by phone, by email, by text, or by video chat, *use public transportation, attend church*, get along with authority (bosses), and live with friends or family . . . [,]" (*id*., PageID.49 (emphasis added)), citing Plaintiff's function reports and her testimony. Then, within the ALJ's review of the function reports, he expressly stated that "[s]ocial activities include talking to others by phone – she rarely goes

28

anywhere regularly . . . [,]" (*id*., PageID.51 (*citing id*., PageID.323)), and that

"[s]ocial activities include visiting others in person (not often), by phone, by email,

by text, or by video chat – she regularly goes to doctor appointments . . . [,]" (*id*.,

PageID.52 (citing (*id*., PageID.342).)

Here, when compared with the "social activities" portion of Plaintiff's

November 2022 function report (*id*., PageID.342), the ALJ's characterization of

Plaintiff's social activities is misleading, at least as to the idea that she is "able to

visit with others in person," (*id*., PageID.49), even if the ALJ later notes her social

activities include "visiting others in person (not often)," (*id*., PageID.52).

Moreover, the same can be said when comparing the "social activities" portion of

Plaintiff's September 2021 function report (*id*., PageID.323) to the ALJ's

characterization that she "only 'occasionally' has problems getting along with

others . . . [,]" (*id*., PageID.58; *see also id*., PageID.51, 59).  Therefore, on remand,

the Court should also require the Commissioner to revisit the characterization of

the "social activities" sections of her function reports, and, then, clarify whether

any further social interaction limitations are warranted.

## F.    Conclusion

Plaintiff has satisfied her burden of proof on one or more of her statement(s)

of error.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)

("during the first four steps, the claimant has the burden of proof; this burden shifts

to the Commissioner only at Step Five."). Having shown legal error in at least one aspect of ALJ Matia's April 2, 2024 decision, it is **RECOMMENDED** that the Court **GRANT IN PART** Plaintiff's motion for summary judgment (ECF No. 12), **DENY** Defendant's motion for summary judgment (ECF No. 14), and **REMAND** this matter to the Commissioner of Social Security for action consistent with the Court's decision.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must precisely recite the provision of this Report and

30

Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  February 9, 2025

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

31